MARGARET MILLER, ADMINISTRATRIX, ETC., RESPONDENT, v. OSCAR SCHMIDT, INCORPORATED, APPELLANT.

Argued May 21, 1924—Decided October 20, 1924.

1. The owner of property may expel trespassers from his property, and the mere act of allowing a child to play in a dangerous environment may charge the owner with liability as to a presumptive invitee.

2. An owner of property who, by his servant, chases a boy from his property, is not liable for the injury to the boy by a trolley car in the public highway, after he has fled from his property, as the expulsion of the boy was not an act of gross negligence which subjected the owner to liability for the subsequent heedless conduct of the boy.

3. The test of willful maliciousness in the exercise of a legal right is not whether a possible injury to a trespasser might reasonably have been anticipated, but whether there was any evidence of an intention to do an injury.

4. The fact that the injured party is an infant cannot extend the liability of an owner exercisig his right in a legal manner, for to except an infant from the doctrine of contributory negligence a liability must primarily be shown to exist as a logical sequence to the existence of a legal duty.

---

On appeal from the Hudson County Circuit Court.

For the appellant, *Wall, Haight, Carey & Hartpence.*

For the respondent, *Alexander Simpson.*

The opinion of the court was delivered by

MINTURN, J.   While some small boys were playing upon the defendant's lumber pile, adjoining but quite apart from the public highway, on Ferry street, in Jersey City, an employe of the defendant, with a stick in his hand, drove, or in the language of the witnesses, "chased" the boys from the pile, one of whom the plaintiff's decedent, a boy of eight years, ran into the street, before an approaching trolley car, and was killed.   As to the Public Service Company, the owner and operator of the car, the jury found in favor of the company, but as to the defendant, Schmidt, Inc., a verdict was found in favor of the plaintiff, from which the defendant, Schmidt, Inc., appeals, contending that in the absence of intentional malicious conduct upon the part of its employe, no legal basis of liability exists against it.   The cause of action was instituted by the plaintiff upon the theory that the mere act of pursuing the boys with a stick from the lumber pile before an approaching trolley car was *ipso facto* gross negligence, and upon that theory the case was submitted to the jury.   The legal right of the defendant to eject or expel from its premises mere trespassers cannot be questioned.   *Del., &c., R. R.* v. *Reich,* 61 *N. J. L.* 635; *Friedman* v. *Snare & Triest Co.,* 71 *Id.* 605.

In this instance the testimony clearly indicates that the boys were trespassers.   With this concession in mind the only inquiry presented for reference to a jury was whether the mere act of warning or chasing the boys from the defendant's premises constituted such an act of gross negligence as to subject the owner of the premises to liability for the subsequent impulsive and reckless conduct of the boys in their efforts to escape.   *Quo animo* seems to be the test applicable to such a situation.   For, manifestly, to tacitly allow immature children to exercise their playful propensities in

a dangerous environment might legally charge the owner with liability as an invitee or licensee; for, as was aptly stated by Chief Justice Beasley, in *Danbeck* v. *New Jersey Traction Co.,* 57 *N. J. L.* 463, 465, "it is the legal duty of everyone dealing with a child to protect it against its own indiscretions," citing the leading case in the English Court of Queen's Bench of *Lynch* v. *Nurdin,* 1 *Q. B.* 422. If, in the exercise of this legal duty, the owner of premises does not abuse the obligation thus cast upon him, but attempts to exercise it consistently with his legal right, and without malice, and in the absence of a wanton disregard of the reasonable necessities of the situation it is not perceivable upon what legal principle, liability for resulting accident in no way due as a necessary consequence to the exercise of a legitimate act of ownership can be predicated. That such is the legal test of liability is amply illustrated by a reference to the adjudged cases in this jurisdiction. *Vanderbeck* v. *Hendry,* 34 *N. J. L.* 467; *Hoberg* v. *Collins, &c., Co.,* 80 *Id.* 425; *Bernadsky* v. *Erie Railroad Co.,* 76 *Id.* 580; *Dierkes* v. *Hauxhurst Land Co.,* 80 *Id.* 369.

Obviously, the adjudged cases contain differentiating circumstances, but the *ratio decidendi* and basic principle of determination inherent in them all is the test of willful maliciousness in the exercise of a conceded right or obligation; for, as was observed by Mr. Justice Voorhees, speaking for this court in the Hoberg case, "that a defendant might reasonably have anticipated a possible injury to a trespasser, plays no part in determining willfulness. There must be some evidence tending to show the maliciousness of the offender, that it is his intention to do an injury, else the jury are without authority to infer it." As in that case, so in this, the record is barren of any testimony from which a jury could reasonably infer a spirit of willful malice, or wanton disregard of personal right, upon the part of the defendant's agent, and for that reason the case should not have been submitted to the jury by the learned trial court.

In the Hauxhurst Land Co. case (*ubi supra*) the differentiation is manifested by the fact that a jury might conclude,

as they did, that the employment of dogs to' pursue children in their playful moments was such a wanton act in *terrorem* as to evince not a spirit fraught with infantile protection, but rather a wicked and malicious disregard of those innocent juvenile propensities which universally inhere in the human species, and in which mankind always, in the thoughtlessness of incipient life, is prone to indulge.

Fundamentally, the doctrine upon which liability is predicated may be traced to that basic maxim of morals as well as of law—*sic utere tuo ut alienum non laedas;* and if, in the attempt to so exercise a lawful right, injury result to another legally classified as a trespasser, the resulting damage becomes in legal contemplation *damnum absque injuria.*

The fact that the injured party is an infant cannot extend the liability of an owner exercising his legal right in a legal manner unless, as we have seen, he can be legally classified from the nature of his act as a tort-feasor. In such a situation the legal status of the complaining party cannot *ipso facto* impose liability for the consequences of an act not legally culpable for, as we observed in *Zampella* v. *Fitzhenry,* 97 *N. J. L.* 517, 522, "an infant's exemption from contributory negligence can be invoked only where liability has been shown primarily to exist as the logical sequence of the concurrent existence of a legal duty;" also *Hoberg* v. *Collins, &c., Co., supra.*

Our examination of the testimony leads us to conclude that there is in the case an entire absence of evidence upon which liability of the defendant, upon the principle indicated, can be legally supported.

The judgment appealed from will therefore be reversed.

*For affirmance*—None.

*For reversal*—THE CHANCELLOR, CHIEF JUSTICE, TRENCHARD, MINTURN, BLACK, KATZENBACH, CAMPBELL, LLOYD, WHITE, GARDNER, VAN BUSKIRK, MCGLENNON, KAYS, JJ. 13.